THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEF REHS,

       Plaintiff,                                    Civil Action No.
                                                                              11-CV-13514

vs.

                                                                             HON. MARK A. GOLDSMITH

CITY OF WARREN POLICE OFFICER
MARK O'KRAY, et al.,

       Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 27)

### I.    Introduction

      This case is brought under 42 U.S.C. § 1983. Plaintiff Josef Rehs has sued Defendants Police Officer Mark O'Kray, Police Officer Lawrence Garner, and Police Officer Martin Kroll for violation of Plaintiff's Fourth Amendment right against excessive force, as well as for the tort of assault and battery under Michigan law. On August 3, 2010, Defendants arrested Plaintiff for illegal entry into a dwelling and for receiving and concealing stolen property. Plaintiff claims that in carrying out the arrest, Defendants used excessive force by (i) punching Plaintiff in the face, (ii) forcibly pulling Plaintiff from his car and onto the ground, and (iii) deliberately stepping on Plaintiff's already-injured foot.

      Defendants moved for summary judgment, invoking the doctrine of qualified immunity for actions pursuant to their official duties (Dkt. 27). Plaintiff filed a response (Dkt. 31) and Defendants filed a reply (Dkt. 32). Discovery has closed. A hearing was held on the motion on November 8, 2012.

The Court concludes that there is insufficient evidence in the record to create a genuine issue of material fact regarding (i) whether Defendants punched Plaintiff, and (ii) whether Defendants deliberately stepped on Plaintiff's foot. The Court also concludes that Plaintiff's right not to be forcibly pulled from his car, under the circumstances of the arrest, was not clearly established. For these reasons, Defendants are entitled to qualified immunity from the excessive force claim. The Court also concludes that Defendants are entitled to immunity from the assault and battery claim. The Court will therefore grant Defendants' motion for summary judgment.

**II.    Background**

On July 26, 2010, an arrest warrant was authorized for Plaintiff on charges of illegal entry into a dwelling and receiving and concealing stolen property. Incident Report at 9 of 10 (CM/ECF pagination), Ex. A to Def. Mot. (Dkt. 27-1). The officer in charge of the investigation contacted Lts. O'Kray and Kroll, notified them of Plaintiff's arrest warrant, and requested that their units assist in locating and arresting Plaintiff. Lt. O'Kray Dep. at 10-11, Ex. D. to Def. Mot. (Dkt. 27-4).

Meanwhile, on August 3, 2010, Plaintiff suffered a small fracture of a bone in his foot, and he was taken to urgent care and given a soft cast. Doctor's Report, Ex. 4 to Pl. Resp. (Dkt. 31-4).

On the same evening, Special Operatives, including Defendants, observed Plaintiff as he was leaving his house. Lt. O'Kray Dep. at 14. Defendants were in an unmarked car, and they requested uniformed Warren Police Officers to move toward Defendants' location to arrest Plaintiff. Id. at 15. As Plaintiff began to drive away, Defendants followed him. Id. at 16-17.

The first marked police car to arrive pulled Plaintiff to the side of 12 Mile Road in the City of Warren. Rehs Dep. at 37-38, Ex. E to Def. Mot. (Dkt. 27-5). This marked car had a

video recorder mounted on its dashboard, and the subsequent arrest of Plaintiff was recorded on video. Several other marked police cars arrived, and both uniformed and plainclothes police officers approached Plaintiff's car on foot. Video at 21:04:19 – 21:04:29 (Ex. G to Def. Br., Dkt. 27-7). Plaintiff removed his keys from the ignition and spoke into his cell phone, "They got me." Video at 21:04:17.

### A. Alleged punch

Defendants testified that both uniformed and plainclothes police officers approached Plaintiff's car and ordered him to exit. At his deposition, Defendant O'Kray stated that he approached the driver's side of Plaintiff's car, and he heard Plaintiff, speaking into his cell phone, tell someone his location and that the police were about to arrest him. Lt. O'Kray Dep. at 19. Defendant O'Kray stated, "He was basically trying to get the distress call out there." Id. Defendant O'Kray stated, "I said hang up the phone. He ignored me, I, I didn't grab the phone I knocked the phone out of his hand, got his attention." Id. at 22.

Plaintiff, at his deposition, stated that a man in plainclothes approached the driver's side door of Plaintiff's car, told Plaintiff to get off the phone, and put his hand through the open window of Plaintiff's car and punched Plaintiff in the face. Rehs Dep. at 42-43. Plaintiff stated, "I was dazed when the officer reached in and punched me in the face." Id. at 45. Plaintiff also testified that there were "knuckle marks" in his forehead from the punch, but by the next day "the swelling from the knuckle marks were gone." Id. at 59.

The video depicts the following scene. At 21:04:19, an unmarked officer (Defendant O'Kray) approached the driver's side and said, "What's up?" Plaintiff then said something into his phone, but it is unclear what. At 21:04:22, Defendant O'Kray said, "Off the phone, asshole," and reached through the driver's side window. At 21:04:23, Defendant O'Kray shoved or

3

smacked the phone out of Plaintiff's hand; Defendant O'Kray's hand was open as he made contact with Plaintiff's phone and hand. Because Plaintiff was holding the phone close to his face, it is unclear whether Defendant O'Kray's hand also made contact with Plaintiff's face. As Defendant O'Kray smacked the phone, Plaintiff flinched or jerked back slightly. If, in fact, there was contact with Plaintiff's face, it was, at most, a glancing blow.

### B. Pulled out of car

The parties are in agreement regarding the material facts of this instance of force, and their accounts are consistent with the video recording. Defendant Kroll opened the driver's side door to forcibly pull Plaintiff from the vehicle. Def. Br. 9-10 (Dkt. 27); Pl. Resp. at 2 (Dkt. 31); video 21:04:29. Plaintiff yelled that his seatbelt was still fastened, at which point Defendant Kroll released Plaintiff and an unidentified officer unfastened the seatbelt. Def. Br. at 9-10; Pl. Resp. at 2; video 21:04:29-21:04:40. Defendant Kroll then pulled Plaintiff from the vehicle and put him facedown on the ground; other officers secured Plaintiff's extremities while Defendant Kroll placed him in handcuffs. Def. Br. at 9-10; Pl. Resp. at 2; video 21:04:42-21:04:55. Plaintiff was then pulled to his feet. Video 21:04:55-21:04:56.

### C. Alleged injury to Plaintiff's foot

Plaintiff testified that when he was lying on the ground, an officer stepped on his foot. Rehs Dep. at 56. Plaintiff further testified that he was not sure if Defendants intended to step on his foot, but "[f]rom the video it looked intentional, because I was yelling, I have a broken foot. My foot was then kicked out from underneath me and then stepped on." Id. Defendant O'Kray testified that he did not notice Plaintiff had a broken foot, and that he was handcuffed quickly, with no "incidents as far as excessive force." Lt. O'Kray Dep. at 26, 28-29 (Ex. D to Def. Br., Dkt. 27-4).

4

The video shows Defendants pushing Plaintiff to the ground at 21:04:47. Although the view is partially blocked by the open driver's side door, Plaintiff's legs and feet are visible under the car door as he lay on the ground. Plaintiff's right foot was covered by something white, although it is unclear from the video that the covering was a cast. From 21:04:44 to 21:04:55, the officers walked around and by Plaintiff as he lay on the ground. At 21:04:55-21:04:56, the officers pulled Plaintiff to his feet. From 21:04:58 to 21:05:03, the officers walked Plaintiff out of sight behind the car. Plaintiff was limping. From 21:04:45 to 21:04:48, and from 21:04:54 – 21:04:56, the view of Plaintiff's foot is partially blocked by the legs and feet of the officers, and it is unclear whether the officers stepped on Plaintiff's foot.

Plaintiff was scheduled for surgery on August 11, 2010, to correct a fifth right metatarsal fracture in his foot. Hospital Report at 8 of 8 (CM/ECF pagination), Ex. 4 to Pl. Resp. (Dkt. 31-4). A Sterling Heights medical record of an examination performed after arrest stated that the position and alignment of Plaintiff's fracture remained unchanged compared to the August 3, 2010 examination (prior to Plaintiff's arrest). Sterling Heights Medical Record at 23 of 25 (CM/ECF pagination), Ex. J to Def. Mot. (Dkt. 27-10).

### III.     Summary Judgment Standard

Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). As the Sixth Circuit has explained:

> Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by "showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be

>viewed in the light most favorable to the non-moving party. Thus, the facts and any inferences that can be drawn from those facts[ ] must be viewed in the light most favorable to the non-moving party.

Biegas v. Quickway Carriers, 573 F.3d 365, 373-374 (6th Cir. 2009) (citations omitted). A fact is "material" if "proof of that fact would have effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## IV. Analysis – Excessive Force Claim

### A. Excessive force claims and qualified immunity, generally

"The use of excessive force by law enforcement officials in effectuating an arrest may give rise to a claim under 42 U.S.C. § 1983." Bass v. Robinson, 167 F.3d 1041, 1045 (6th Cir. 1999). To succeed on a § 1983 claim, the plaintiff must demonstrate that a person acting under the color of state law deprived the plaintiff of a constitutional right. Blosser v. Gilbert, 422 F. App'x 453, 456 (6th Cir. 2011). An excessive force claim is analyzed as a violation of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 388 (1989).

Qualified immunity is a defense against civil suits for government officials in the performance of their discretionary duties. "Government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." Jefferson v. Lewis, 594 F.3d 454, 459 (6th Cir. 2010). Once the defendants raise the defense of qualified immunity, the plaintiffs have the burden of proving that the officials are not entitled to qualified immunity. Blosser, 422 F. App'x at 456.

Courts apply a two-step test in evaluating claims of qualified immunity. As the Sixth Circuit explained,

> [A] "defendant enjoys qualified immunity on summary judgment unless the facts alleged and evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." Morrison, 583 F.3d at 400 (citing Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008)).

Jefferson, 594 F.3d at 459-460. Courts need not address the steps sequentially. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Either step, if not met, requires the court to grant qualified immunity. See id. at 232.

Excessive force cases are analyzed under the objective reasonableness standard of the Fourth Amendment. Bass, 167 F.3d at 1045. Applying the objective reasonableness standard requires "a careful attention to the facts and circumstances of each particular case." Id. (citing Graham v. Connor, 490 U.S. at 394). The Supreme Court has identified three factors that courts should consider in determining whether the defendant's conduct was objectively reasonable: (i) "the severity of the crime at issue;" (ii) "whether the suspect poses an immediate threat to the safety of the officers or others;" and (iii) "whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

In addition to demonstrating a constitutional violation, Plaintiff also must show that the allegedly violated right was clearly established at the time of the arrest. "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Kowolonek v. Moore, 463 F. App'x 531, 537 (6th Cir. 2012) (citations and quotation marks omitted). In order to meet this test, Plaintiff should point to cases that clearly established the contours of the right, id., or should present

7

evidence that the nature of the right was sufficiently "obvious" to put Defendants on notice. Schreiber v. Moe, 596 F.3d 323, 333 (6th Cir. 2010) (citations omitted).

### B. Parties' arguments, generally

Defendants moved for summary judgment, arguing that they are qualifiedly immune from liability because the officers' actions were objectively reasonable under the circumstances. Defendants argue that the context of the arrest justified the actions of the officers. Def. Br. at 16-17 (Dkt. 27).

Plaintiff responds that Defendants are not entitled to qualified immunity because Defendants violated Plaintiff's clearly established constitutional right to be free from gratuitous force during a Fourth Amendment seizure. Pl. Resp. Br. at 9 (Dkt. 31). Plaintiff argues that his underlying crime was not severe, he posed no immediate threat to the safety of the officers or others, and he did not actively evade arrest or seek flight. Id. at 11.

### C. Discussion

Courts in the Sixth Circuit, when "faced with an excessive force case that involves several uses of force must generally 'analyze the . . . claims separately.'" Gaddis ex re. Gaddis v. Redford Township, 364 F.3d 763, 772 (6th Cir. 2004) (citation and quotation marks omitted). Furthermore, "[e]ach defendant's liability must be assessed individually based on his own actions." Binay v. Bettendorf, 601 F.3d 640, 650 (6th Cir. 2010) (citations omitted). Therefore, the Court will consider, in turn: (i) the alleged punch by Defendant O'Kray, (ii) Defendant Kroll's forcible removal of Plaintiff from the car, and (iii) the alleged injury to Plaintiff's already-broken foot by an unidentified officer.

#### 1. The alleged punch

The parties dispute whether Defendant O'Kray punched Plaintiff. Defendants contend

8

that Plaintiff was never punched, and that Defendant O'Kray only knocked Plaintiff's cell phone from his hand. Def. Rep. Br. at 3 (Dkt. 27). Defendants also argue that the officers reasonably inferred that Plaintiff may try to use his cell phone as a weapon or to call for help, and therefore acted reasonably in reaching into the car to knock the phone from Plaintiff's hand. Def. Mot. at 17 (Dkt. 27). Defendants contend that this was a reasonable action to take in furtherance of officer safety. Id. Plaintiff responds that the punch was an objectively unreasonable use of force because Plaintiff was neutralized and non-resisting, and the situation did not justify the use of force. Pl. Resp. Br. at 9 (Dkt. 31).

After thoroughly reviewing the record, the Court concludes that there is insufficient evidence to raise a question of fact regarding whether Plaintiff was punched in the face with more than minimal force. The Supreme Court has held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). The Court concludes that the video would not permit a reasonable juror to find that Plaintiff was punched in the face with more than minimal force, if at all.

The video depicts Defendant O'Kray reaching through the driver's side window and shoving or smacking the area of Plaintiff's hand, which Plaintiff held close to his face. As Defendant O'Kray reached through the window and knocked Plaintiff's phone away from Plaintiff's hand and face, Defendant O'Kray's hand was not in a closed fist, but held open. At the point where Defendant O'Kray made contact with Plaintiff, Plaintiff jerked back slightly. However, if Defendant O'Kray punched Plaintiff in the face as Plaintiff claims, it would be expected that (i) Defendant O'Kray's hand would be in a closed fist and (ii) Plaintiff would be

9

thrown forcibly back. The scene depicted in the video shows Plaintiff flinching back when Defendant O'Kray knocked his phone away; it does not depict a punch to the face; if there was any contact, it was glancing, at most. Finally, the Court notes that Plaintiff, in his deposition, claimed he had "knuckle marks" on his forehead from the punch; however, it is evident from the video that Defendant O'Kray did not touch Plaintiff's forehead.[1]

For these reasons, the Court concludes that no reasonable juror viewing the video could find that Plaintiff was punched with anything more than minimal force. Minimal contact is not constitutionally actionable because "[n]ot every push or shove . . . violates the Fourth Amendment," Graham, 490 U.S. at 396-397. Moreover, it is objectively reasonable for officers to use the level of force that is necessary to neutralize safety threats to themselves. See Dunn v. Matatall, 549 F.3d 348, 355 (6th Cir. 2008) (holding that forcibly pulling a suspect from a car, during which the suspect fractured his leg, was objectively reasonable in order to secure a resisting suspect).

Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-397. In this case, Defendant O'Kray heard Plaintiff giving information about his location over the phone, and Defendant O'Kray testified that he perceived this as Plaintiff attempting to summon help. Under those circumstances, it was reasonable for Defendant O'Kray to knock Plaintiff's phone from his hand—using slight force—to prevent Plaintiff from revealing his location to an unknown party.

---

[1] Defendant O'Kray's hand was in the area of Plaintiff's chin or jaw; it was not near his forehead. Because Plaintiff's testimony regarding knuckle marks on his forehead is "blatantly contradicted" by the video evidence, the Court may decline to accept Plaintiff's testimony as creating a genuinely disputed issue of fact. See Scott v. Harris, 550 U.S. 372, 380 (2007).

10

For these reasons, the Court concludes that Defendant O'Kray is entitled to qualified immunity from the claim that Plaintiff was punched in the face.[2]

### 2. Force used to extract Plaintiff from the car

Defendants contend that under <u>Dunn v. Matatall</u>, 549 F.3d 348 (6th Cir. 2008), an officer forcibly pulling an apparently resistant suspect from a car may not form the basis for police liability. Def. Br. at 17-18 (Dkt. 27). Defendants argue that an arrestee may reasonably seem to be resisting arrest when the officers experience difficulty removing the arrestee from his vehicle; therefore, even the passive resistance presented by a fastened seatbelt is sufficient to make an officer's action in pulling the arrestee forcibly from the car objectively reasonable. <u>Id.</u> at 15-16.

Plaintiff argues, in response, that <u>Dunn</u> has no application to this case. Pl. Br. at 5 (Dkt. 31). Plaintiff argues that Dunn is distinguishable because (i) the officers in Dunn were in a marked police car with activated sirens and lights as they pursued the suspect in a car chase, and (ii) the suspect was noncompliant and actively fled the officers. <u>Id.</u> at 5-6. Plaintiff further contends that because he was neutralized and offered no active resistance Defendants' actions toward him as though he was resisting were objectively unreasonable. <u>Id.</u> at 10.

In light of the parties' arguments and Sixth Circuit precedent on point, the Court concludes that Plaintiff's right not to be pulled from his car was not clearly established. In <u>Dunn v. Matatall</u>, 549 F.3d at 354-355, the Sixth Circuit held that a suspect has no clearly established right not to be forcibly pulled from his car when the subject, attempting to evade arrest, had led the police on a car chase. The defendants there stopped the plaintiff after a high-speed car chase and the defendants commanded the plaintiff to unlock his door, which the plaintiff did. <u>Id.</u> at

---

[2] In his deposition, Plaintiff also claimed that Defendants punched him in the back of the head after he was removed from the car and handcuffed. Rehs Dep. at 58, Ex. E to Def. Br. (Dkt. 27-5). However, because neither party referenced this alleged incident in their briefs, the Court does not consider it in deciding the present motion.

351. The defendants began pulling the plaintiff from the car, but were unable to do so because the plaintiff's seatbelt was still fastened. Id. After the seatbelt was unfastened, the plaintiff was pulled from his car and fell heavily onto the ground, breaking a bone in his leg. Id. The Dunn court emphasized that the plaintiff, despite seeming compliant once he stopped his car, had resisted the arrest by leading the officers on a high-speed car chase, and that the officers did not use excessive force in pulling the plaintiff from his car. Id. at 354-355.

Additionally, the Sixth Circuit has determined that any resistance presented by an arrestee—even if the resistance is solely the result of a fastened seatbelt—weighs in favor of the reasonableness of an officer's actions in forcibly pulling the suspect from the car. See, e.g., Dunn at 354-355; Blosser v. Gilbert, 422 F.App'x 453, 458 (6th Cir. 2011).

Plaintiff argues that Dunn is distinguishable because in the instant case, unlike in Dunn, there was no car chase and Plaintiff did not actively resist the officers. However, the Court notes that Plaintiff has presented no authority that would put a reasonable officer on notice that it was impermissible to pull a suspect from his car. The lack of case law clearly on point, combined with the cases, such as Dunn, holding that police may forcibly pull a suspect from his car in the context of a car chase with a resisting suspect, means that the contours of the right, as argued by Plaintiff, were not clearly established such that a reasonable officer would know his conduct was unlawful. Graham v. Connor, 483 U.S. 635, 640 (1987). Therefore, this action is on "the hazy border between excessive and acceptable force," from which qualified immunity is designed to protect officers. Blosser, 422 F. App'x at 458 (citation and quotation marks omitted). Defendant Kroll is entitled to qualified immunity on this claim.

### 3. Defendants allegedly deliberately stepping on Plaintiff's injured foot

12

Plaintiff contends that Defendants knew Plaintiff's foot was injured because his foot was in a cast, and that Defendants purposefully stepped on his foot while Plaintiff was restrained on the ground. Pl. Resp. at 10 (Dkt. 31). Plaintiff claims that the force Defendants used on Plaintiff's foot exacerbated the fracture in his foot. Id. Plaintiff also argues that he need not demonstrate that a significant injury occurred as the result of excessive force, because even a slight injury suffices to establish a violation of the Fourth Amendment. Id. (citing Holmes v. Massillon, 78 F.3d 1041, 1048 (6th Cir. 1996)). Plaintiff further argues that because he was neutralized and nonresistant, Defendants' action in stepping on his foot was objectively unreasonable. Pl. Resp. at 11 (Dkt. 31).

Defendants contend that the officers did not step on Plaintiff's foot, and that Plaintiff did not require additional medical treatment for injury to that foot after the arrest. Def. Br. at 10-11 (Dkt. 27). Defendants further argue that even if Plaintiff's already-broken foot was further injured in the arrest, that fact would not be material, because Dunn would still protect Defendants from liability. Def. Br. at 18 (Dkt. 27).

The Court concludes that there is insufficient evidence in the record to raise a genuine issue of fact as to whether Defendants intentionally stepped on Plaintiff's injured foot. The video of the arrest depicts nothing that would lead a reasonable juror to find that any of the officers deliberately stepped on Plaintiff's foot. Notably, the video does not show any of the officers looking at Plaintiff's foot and forcefully stomping on it or kicking it.

Furthermore, in Plaintiff's deposition, he stated that he did not know if the officers intentionally stepped on his foot, although he opined that, after watching the video, it looked like they intentionally stepped on his foot. However, the Court disagrees with Plaintiff's interpretation of the video, and there is no reason that Plaintiff's commentary on what the video

13

appears to show should be considered of any evidentiary significance.[3]

Finally, Defendant O'Kray stated that he did not know Plaintiff had a broken foot, and did not notice he was wearing a cast. Plaintiff has not set forth any evidence contradicting this.

As the Court determined above, Defendants' actions in forcibly pulling Plaintiff to the ground to secure him were not a violation of Plaintiff's clearly established constitutional rights. Further, the Court cannot say as a matter of law that, if Defendants unknowingly stepped on Plaintiff's foot in the course of securing him, such accidental contact would constitute excessive force. In Hunter v. Bryant, 502 U.S. 224, 229 (1991), the Supreme Court stated that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." (citation and quotation marks omitted). Accidentally stepping on, or making contact with, Plaintiff's foot during the approximately 11-second period that he was on the ground, with several officers walking around and by him, would not be "plainly incompetent." Furthermore, as stated above, the evidence in the record would not allow a reasonable juror to conclude that Defendants intentionally stepped on Plaintiff's foot.

The Court also notes that the medical evidence in the record indicates that Plaintiff's foot injury was no worse after the arrest than it was before. See Sterling Heights Medical Record at 23 of 25 (CM/ECF pagination), Ex. J to Def. Mot. (Dkt. 27-10). Although gratuitous infliction

---

[3] As a lay witness, Plaintiff's opinion is only admissible if it is "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701(b). Lay testimony opining on or interpreting other evidence may not be admissible if the "evidence is clear and the trier of fact is perfectly capable of perceiving, understanding, and interpreting it." 1-10 Weinstein's Evidence Manual § 10.02. In this case, the Court is capable of "perceiving, understanding, and interpreting" the video; furthermore, the Court has carefully reviewed the video and can discern nothing, such as body movements or facial mannerisms, that suggests any contact with Plaintiff's foot was intentional. Therefore, Plaintiff's opinion is insufficient to raise a genuine factual issue. See United States v. Henke, 222 F.3d 633, 641 (9th Cir. 2000) ("[A] lay witness's [opinion] testimony [] is permissible only when it is helpful to understanding the witness's testimony or to the determination of a fact in issue. If the jury already has all the information upon which the witness's opinion is based, the opinion is not admissible.").

of pain may form the basis of an excessive force claim, Holmes v. Massillon, 78 F.3d 1041, 1048 (6th Cir. 1996), Plaintiff's claim is premised – not on the gratuitous infliction of pain – but on the exacerbation of his injuries after the arrest. Pl. Resp. at 10 (Dkt. 31). Therefore, the Court concludes that there is insufficient evidence in the record to raise a genuine issue of fact as to Plaintiff's claim that the officers' actions during the arrest worsened his foot injury.

For the above reasons, Defendants are entitled to qualified immunity from this claim.

### V. Analysis – Assault and Battery Claim

Defendants contend that there were no instances of excessive force that would warrant liability for state law assault and battery. Def. Br. at 19 (Dkt. 27). Plaintiff ties his assault and battery claim to his excessive force claim, arguing that because any officer who uses excessive force is liable for assault and battery, and because Defendants used unreasonable and excessive force to effectuate the Plaintiff's arrest, Defendants are not entitled to summary judgment. Pl. Resp. at 12-13 (Dkt. 31).

The Court agrees with Defendants, and concludes that Defendants are entitled to summary judgment on the assault and battery claim. In Pershell v. Cook, 430 F. App'x 410 (6th Cir. 2011), the Sixth Circuit stated:

> In Michigan, a law enforcement officer is entitled to immunity [from assault and battery claims] if
>
> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
> (c) the acts were discretionary, as opposed to ministerial.

Pershell, 430 F. App'x at 416-417. Here, as in Pershell, it is undisputed that the officers were undertaking acts during the course of employment and in the scope of employment and that the acts were discretionary. The issue remaining is whether the acts were undertaken in good faith.

The good faith element for a claim of assault and battery is analyzed by determining whether the officer's actions were "objectively reasonable under the circumstances." Id. at 417 (citing Van Vorous v. Burmeister, 687 N.W.2d 132, 142 (2004)). The good-faith element of the test protects a defendant acting in good faith, while exposing to liability one who acts with "malicious intent." Id. (citation and quotation marks omitted). If an officer's actions were not objectively unreasonable under a Fourth Amendment analysis, the actions also were not objectively unreasonable under the good faith element of the state law test. See VanVorous, 687 N.W.2d at 142.

As discussed in the Fourth Amendment excessive force analysis above, Defendants did not act objectively unreasonably in knocking Plaintiff's cell phone away from his face. Furthermore, the Court concludes that Defendants did not act with "malicious intent" in forcibly pulling Plaintiff from his car; as discussed above, it was reasonable for Defendants to secure Plaintiff in this fashion. Finally, Plaintiff has not presented any evidence indicating that Defendants intentionally stepped on Plaintiff's injured foot, and the Court therefore concludes that there is no evidence of malicious intent regarding that alleged incident or lack of good faith. For these reasons, the Court concludes that Defendants are entitled to immunity from the assault and battery claims.

### VI. Conclusion

For the reasons stated above, Defendants' motion for summary judgment (Dkt. 27) is granted.

SO ORDERED.

Dated: February 11, 2013         s/Mark A. Goldsmith
       Flint, Michigan        MARK A. GOLDSMITH
       United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 11, 2013.

       s/Deborah J. Goltz
       DEBORAH J. GOLTZ
       Case Manager